236

## UNITED STATES v. THE REEFER KING.

### No. 15299.

United States District Court
W. D. Washington, N. D.
March 24, 1950.

---

In this case the libelant United States of America filed its Libel of Information against the respondent M. V. Reefer King, Official No. 249986, 527 gross tons, to recover penalties for failure of the vessel to have on board a certificate of inspection when on October 21, 1948, it departed from Seattle for Honolulu, in violation of Sec. 404, Title 46 U.S.C.A., and for failure of the vessel to comply with the requirements of the Load Line Act, Title 46 U.S.C.A. §§ 88 to 88i, inclusive, when it departed on that voyage.

The shipowner denied the vessel was required to comply with any of the provisions of any of said sections, because the vessel was operating under a bareboat charter and engaged exclusively in carrying the charterer's cargo, and was not carrying any cargo for hire.

J. Charles Dennis, U. S. Atty., and John E. Belcher, Asst. U. S. Atty., Seattle, Washington, for libelant.

Bogle, Bogle & Gates, and Claude E. Wakefield, Seattle, Washington, for respondent.

BOWEN, Chief Judge.

Respecting the alleged violation of Sec. 404, Title 46 U.S.C.A., relating to vessel inspections, it is necessary that the libelant in this case establish that the vessel was, at the time of the alleged accrual of

the penalties, engaged in the carriage of freight or passengers for hire within the meaning of that Section. The evidence, as disclosed by libelant's Exhibit 3, indicates that the vessel was not carrying cargo at a per ton freight rate, but that for a lump sum charter hire she was carrying cargo belonging exclusively to the charterer under a bareboat charter, and that all of the compensation which the vessel or her owner was to receive or did receive for the business in which the vessel was engaged was the so-called bareboat hire, which, the Court finds, was nothing more than compensation in the form of vessel rental paid by the charterer for the entire vessel's use in the carriage of the charterer's cargo exclusively. Under the charter provisions, such vessel rental was payable whether or not the vessel carried any cargo. The charter prohibited carriage of cargo belonging to persons other than the charterer.

The Court finds and concludes from a preponderance of the evidence in the case, there being no evidence to the contrary, that the vessel at the time of the alleged accrual of the penalties here sued for was not, within the meaning of said Sec. 404, engaged in the carriage of freight or passengers for hire, and that the vessel and her owner are not liable to pay to libelant any sum or sums on account of violation of Sec. 404 of Title 46, U.S.C.A., relating to inspection and certificates of inspection of vessels of above fifteen gross tons carrying freight or passengers for hire.

Accordingly, it is the decision of the Court that libelant take nothing on account of the alleged violations of Sec. 404.

As to the allegations of the libel concerning the alleged failure of the vessel to comply with the law and regulations relating to the establishment of the load line and indicating it on the vessel and having on the vessel a certificate of load line inspection, the Court is not assisted in determining that issue by any statute or court decision expressly defining the statutory words or term "merchant vessels", to which the requirements of the load line law and regulations relate.

If the Reefer King, at the time of the alleged accrual of the load line law penalties here sued for, was not a "merchant vessel" within the meaning of Secs. 88 to 88i, inclusive, Title 46 U.S.C.A., then the vessel cannot be held liable for violation of the law and regulations relating to load line. If, on the other hand, the vessel was such a "merchant vessel", then it is subject to the penalties of the law for failure to comply with the statutory load line requirements.

That question is naturally to be determined by the character of the business in which the vessel was engaged at the time of the alleged accrual of the penalties for load line law violation.

Under the bareboat charter, in evidence as libelant's Exhibit 3, and as appears from other evidence, the vessel was to carry and it did carry exclusively the cargo of the charterer, Meats, Inc., a corporation. The charterer was engaged in selling and shipping to Honolulu a quantity of meat and fish.

Such business of the charterer, namely, selling and shipping to Honolulu of such cargo, was commerce. The cargo so sold and shipped was merchandise in trade, the selling and shipping of it was merchant trade, and the vessel which was rented or hired under the bareboat charter to carry such merchandise in trade was also engaged in commerce and trade, no matter whose cargo was being carried on the vessel.

Webster's New International Dictionary, (2nd Ed. 1941), page 1538, defines "merchant ship" as "a ship employed in commerce". Obviously, "merchant ship" is the same as "merchant vessel".

The Courts finds, concludes and decides that the vessel the Reefer King, at the time of the alleged accrual of the penalties here sued for because of alleged violation of the load line law and regulations, was engaged in commerce, was then a merchant vessel within the meaning of the load line acts of Congress as contained in Secs. 88 to 88i, Title 46 U.S.C.A., and was required to comply with said sections, and that the libelant is entitled to recover of and

from respondent vessel a penalty of $500 on account of the alleged violations of the load line law and regulations, without costs.

Such liability of respondent vessel derives from the fact that the owner and master of the vessel permitted the vessel to depart on its Honolulu voyage from the Port of Seattle without having complied with the provisions of the law and regulations relating to load line and load line inspection and certificates of load line inspection.